IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| JOSHUA COBY CLEM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 6:25-CV-00061-H-BU |
| CARLOS MARTINEZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Joshua Coby Clem is yet another errant pro se litigant who believes the State of Texas and its officials violate his constitutional rights by requiring him to have a driver license to operate a vehicle in Texas. To make things right, Clem, a.k.a. "Joshua-Coby; of the family Clem . . . a Living, flesh and blood man," seeks to impose a laundry list of penalties on state officials for enforcing against him the laws of the State of Texas. Clem derives these penalties from his fictional "Transgression Fee Schedule."[1] Dkt. No. 10 at 3–4. He further demands that the millions of dollars in "restitution" owed to him by the officials perpetrating these "crimes" against him be paid "in Legal Tender .999 one-

---

[1] Among the many transgression fees Clem seeks to recover here are: Slavery, $250,000; Genocide Against Humanity, $1,000,000; Apartheid, $1,000,000; Armed Land Piracy/Plunder, $200,000; Armed Torture, $200,000; Ictitious [sic] Conveyance of Language, $200,000; and Armed Violation of Lieber Code Against Non-Combatants, $200,000. Dkt. No. 10 at 6–15.

1

ounce silver coin, no later than 30 days upon receipt of my True Bill." *Id.* at 4–5. Clem invites this Court to set aside its other work and join him in his fantasyland to serve as his tool for extracting from state officials the owed silver coins.

Clem was granted leave to proceed *in forma pauperis*, Dkt. No. 7, which subjects his claims to preliminary screening under 28 U.S.C. § 1915. Clem has since filed an Amended Complaint, a Supplemental Complaint, responses to the Court's questionnaire, a Second Amended Complaint, and a smattering of "supplemental evidence," all in support of claims based on fictional violations of fictional rights. *See* Dkt. Nos. 10, 14, 15, 19, 21, 22. It is fair to say that Clem has pleaded his best case, and that no further amendments will improve his claims.

1. **Jurisdiction**

Clem brings this action under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3). Dkt. No. 14. Venue is proper in the Northern District of Texas, San Angelo Division, because the facts giving rise to Clem's claims occurred in Crocket and Tom Green counties. Dkt. Nos. 1, 22. This case was automatically referred to the undersigned for pretrial management under Special Order 3-251. Clem has not consented to the undersigned exercising the full jurisdiction of this Court.

2. **Factual background**

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept *well-pleaded* factual allegations as true and view them in the light most favorable to the plaintiff. *Neitzke v. Concordia Par. Corr. Facility*, 848 F.3d

415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

The government officials sued here are (1) Carlos Martinez, the Crockett County Constable who arrested Clem for driving without a license with a prior conviction or suspension for same, (2) Susan Werner, Justice of the Peace, Precinct 1, Tom Green County, who refused to consider Clem's constitutional challenges to the citation, and (3) Chris Taylor, County Attorney for Tom Green County, who presumably had the unenviable job of prosecuting the citation against Clem.[2] Dkt. No. 22 at 1–2.

Clem insists that he has an absolute right to drive in Texas without a state-issued driver license, and that law enforcement's attempts to enforce State law to the contrary infringe on his constitutional rights. Clem's claims are rooted, at least here, in two specific traffic stops which occurred in May and June of this year. On May 23, 2025, Clem's wife, Julia, "received a traffic citation after their minor son was allegedly observed driving without a license." Dkt. No. 1 at 2. Clem responded to this citation by filing "a First Amendment Petition for Abatement, raising constitutional challenges including lack of verified complaint, misnomer, and jurisdictional overreach." *Id*. Instead of ruling on

---

[2] Other than naming Taylor as a defendant, Clem provides no factual allegations to support a claim against him.

Clem's constitutional challenges to the unlicensed-driver citation, Justice of the Peace Werner "unilaterally reclassified the Petition in Abatement as a 'Plea of Not Guilty.'" *Id*.

Clem was later stopped by Martinez on June 12, 2025, and arrested for "Driving While License Invalid with Previous Conviction/Suspension/No Financial Responsibility." *Id*. He was held in custody for approximately 30 hours before posting a $2,000 bond and being released. *Id*. Clem complains that officials have "explicitly warned" him that he "would be arrested again if found driving, effectively placing Plaintiff under de facto house arrest and depriving him of the ability to travel freely." *Id*. Clem's wife "is now forced to drive him everywhere[.]" *Id*. Clem concedes he has never been "formally charged" for Driving While License Invalid with Previous Conviction, and the citation remains "unresolved." Dkt. No. 15 at 4.

### 3. **Clem's claims**

Clem brings three claims: (1) unlawful arrest and seizure in violation of the Fourth Amendment; (2) due process violations under the Fourteenth Amendment; and (3) retaliation for exercising his freedom of speech, in violation of the First Amendment. Dkt. No. 22 at 2. To help Clem further develop the factual bases for these claims, the Court required him to respond to a questionnaire in which Clem provided the following additional facts. *See* Dkt. No. 15.

**Claim 1**: Unlawful arrest in violation of the Fourth Amendment

Question No. 1(a): At the time Martinez stopped you, did you have a valid driver's license? If no, please state why you were operating a vehicle without a license.

Clem's response: At the time of the traffic stop on June 12, 2025, I did not have a State-issued driver's license. I do not believe I was required to possess one because I was not engaged in any commercial activity. I was exercising my constitutional right to travel privately, a protected liberty interest recognized under the First and Fourteenth Amendments. I showed the officer my passport as identification.

Question No. 1(b): Do you currently have a valid driver's license?

Clem's response: I do not have a State-issued driver's license currently.

. . .

Question No. 1(d): You claim that Martinez has effectively placed you on house arrest by refusing to let you drive without a license. Since the alleged events, have you been able to leave your residence? If no, please state why you are unable to leave your residence through means other than driving yourself.

Clem's response: Yes. I have been repeatedly warned that I will be arrested again if seen driving. I now rely solely on my wife for transportation, and we live in a rural area with no public transportation options. This has caused substantial hardship.

. . .

Question No. 5(a): The right to travel protects an individual's ability to travel from one state to another and to take up residence in a state of his choice. Please explain why requiring you to obtain a driver's license to drive unreasonably burdens your ability to leave the state.

Clem's response: Travel is a fundamental constitutional right. Requiring a license, which is a State-granted privilege, to exercise a right is impermissible. I was not engaged in any form of commerce, for-hire transportation, or carrying goods or passengers. Therefore, the Texas Transportation Code does not apply to my private travel. *See: - Thompson v. Smith*, 154 SE 579 (Va. 1930) - *Chicago Motor Coach v. Chicago*, 337 Ill. 200 (1929) - *Shapiro v. Thompson*, 394 U.S. 618 (1969). The imposition of

5

licensing, fees, and penalties on my right to travel transforms a protected liberty into a regulated privilege, in violation of due process and equal protection principles.

*Id*. at 3–5, 8.

**Claim 2**: <u>Due process violations in violation of the Fourteenth Amendment</u>

<u>Question No. 2(a)</u>: How long were you held in custody prior to your arraignment?

<u>Clem's response</u>: I was held for approximately 30 hours before arraignment. During that time, I was subjected to a full pat-down, strip search, and was forced to wear a prison-issued orange jumpsuit while being held in a jail cell in Crockett County.

. . .

<u>Question No. 2(c)</u>: Please describe how Martinez's actions or conduct led to the violation of your Fourteenth Amendment? In other words, how did Martinez cause you to—not just be detained—but be detained for an allegedly unconstitutional length of time?

<u>Clem's response</u>: Constable Martinez arrested me without a warrant or probable cause *that I was engaged in commercial driving*. The arrest initiated the chain of events that led to my extended detention. No judicial oversight occurred before or during my confinement.

*Id*. at 5–6. (emphasis added).

**Claim 3**: <u>Retaliation for asserting rights in violation of the First Amendment</u>

<u>Question No. 3(a)</u>: You stated that this alleged retaliation was in response to you exercising your First Amendment right. Please state (1) when you exercised this right, (2) how you exercised it, and (3) how Martínez knew you were exercising it.

<u>Clem's response</u>: I have publicly expressed my belief in the constitutional right to travel freely without being required to obtain a State-issued driver's license. My son communicated these beliefs during a previous stop with Constable Martinez. I also verbally informed Constable Martinez of this position when I was pulled over.

6

> Question No. 3(b): You allege that Martinez engaged in various adverse actions against you. Please state (l) when these adverse actions occurred, (2) how Martinez's actions harmed you, and (3) any evidence to suggest that Martinez was acting with a retaliatory intent.
>
> Clem's response: Martinez has initiated a series of retaliatory actions: He had my wife cited twice for traffic violations while driving me. He caused three police vehicles to conduct an aggressive stop, where he stood outside my window while sheriff deputies issued citations. He has repeatedly parked near or outside my house and conducted stops in front of my residence. He instructed deputies to warn me not to drive or face arrest and impoundment. He approached my son at a public pool and questioned him about my beliefs. These actions have created a chilling effect on my freedom of expression, association, and movement.

*Id*. at 6–7.

### 4. Legal standards

A court must dismiss a complaint filed *in forma pauperis* or filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke,* 490 U.S. at 325. A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim "turns on the sufficiency of the 'factual

allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the

pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

### 5. Analysis

To state a claim under § 1983, Clem must "allege facts [plausibly] showing that a person, acting under color of state law, deprived him of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010).

Even under the most liberal construction of Clem's claims, he has failed to plausibly allege that a person acting under color of law deprived him of a right secured by federal law. To the contrary, Clem's core contention—that he is not required to have the State of

9

Texas's permission to operate a motor vehicle on public roads—is "blatantly incorrect." *Perkins v. Brewster*, No. 1:17-CV-1173-LY, 2018 WL 4323948, at *2 (W.D. Tex. Sept. 7, 2018).

Clem's claims echo those that "derive from the so-called sovereign citizen movement and are legally frivolous." *Westfall v. Davis*, Civ. No. 7:18-cv-00023-O-BP, 2018 WL 2422058, at *2 (N.D. Tex. May 4, 2018) (internal quotes omitted). These arguments are used to avoid legal liability and criminal prosecution. *See id.*; *see also Perkins v. Ivey*, 772 F. App'x 245 (5th Cir. 2019) (denying "sovereign citizen" claims of no duty to have a driver's license or vehicle registration); *Mason v. Anderson*, Civil Action H-15-2952, 2016 WL 4398680 (S.D. Tex. Aug. 18, 2016) (denying a "sovereign citizen's" Section 1983 claims against law enforcement). Sovereign citizen beliefs "have never worked in a court of law—not a single time." *Wirsche v. Bank of Am., N.A.*, No. 7:13-CV-528, 2013 WL 6564657, at *2 (S.D. Tex. Dec. 13, 2013).

Like many other sovereign citizens' claims, Clem's claims are "based solely on [an] argument rejected by the courts." *Perkins,* 2018 WL 4323948, at *2. The Supreme Court established "long ago that states may regulate the operation of all motor vehicles that drive within their borders," including the licensing and registration of drivers "pursuant to their constitutionally protected police power." *Ivey*, 772 F. App'x at 246 (citing *Hendrick v. Maryland*, 235 U.S. 610, 622 (1915)). Texas law states that "drivers may not operate a motor vehicle on a highway in this state unless the person holds a driver's license" and must produce the license if requested by a police officer. *Id.* (quoting Tex. Transp. Code Ann. § 521.021 (West)). Clem's unsupported invocation of the First, Fourth, and

Fourteenth Amendments adds no gravitas to his otherwise frivolous claims. He has simply failed to plead sufficient facts—despite ample opportunity—to permit the Court to draw a reasonable inference that his rights under these amendments were violated.

### a. *Unlawful arrest in violation of the Fourth Amendment*

"To ultimately prevail on his section 1983 false arrest/false imprisonment claim, [a plaintiff] must show that [the arresting officer] did not have probable cause to arrest him." *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir.2001) ("The 'constitutional torts' of false arrest . . . and false imprisonment . . . require a showing of no probable cause."). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Id.* at 656 (quoting *Glenn v. City of Tyler,* 242 F.3d 307, 313 (5th Cir.2001)).

Clem's allegations fail to plausibly support that Martinez lacked probable cause to arrest him for driving—on more than occasion—without a license. Indeed, Clem admits he not only drove without a license, but insists that he was entitled to do so, a position he still maintains. In other words, Clem does not dispute the facts Martinez relied on to determine probable cause existed for Clem's arrest for driving without a license. Rather, Clem challenges the law that makes driving without a license an offense in the first place. This is a legally frivolous claim. Clem alleges no other facts from which the Court can reasonably infer that his Fourth Amendment rights were otherwise violated.

11

### b. *Due process violations in violation of the Fourteenth Amendment*

"No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause embodies two distinct concepts: procedural due process and substantive due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "Procedural due process requires the government to follow appropriate procedures before it deprives a person of an interest in life, liberty, or property; substantive due process ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes." *Id.* at 331 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). In other words, "[p]rocedural due process guarantees that a state proceeding which results in a deprivation of property is fair, while substantive due process ensures that such state action is not arbitrary and capricious." *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994) (citing *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990), *cert. denied*, 498 U.S. 1041 (1991)).

It is unclear whether Clem advances a procedural due process claim, a substantive due process claim, or both. But neither is viable. When the Due Process Clause is invoked in a novel context, as here, the court first determines "the exact nature of the private interest that is threatened by the State." *Lehr v. Robertson*, 463 U.S. 248, 256 (1983). Only after identifying the nature of the private interest at stake can the adequacy of a State's process be assessed. *Id.*

Clem's allegations purport to seek vindication of a liberty interest in the right to travel. "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116,

125 (1958). "Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Dunn v. Blumstein*, 405 U.S. 330, 338 (1972) (internal quotation marks omitted). The freedom of movement is "deeply engrained in our history" and "is basic in our scheme of values." *Kent*, 357 U.S. at 126. The Supreme Court has "long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which *unreasonably burden or restrict* this movement." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969) (emphasis added). State laws that unreasonably burden the right to travel will be held unconstitutional unless the law is "necessary to promote a compelling government interest." *Id.* at 634; *see also United States v. Byrd*, 419 F. App'x 485, 491 (5th Cir. 2011).

Clem insists that his liberty interest in travel is broad enough to encompass not only the freedom to move about the country, but the freedom to drive on public roads without a license. But there is no such liberty interest, and requiring drivers to be licensed does not unreasonably burden a person's right to travel. As explained above, "states may regulate the operation of all motor vehicles that drive within their borders," which includes the power to require licensing and registration of drivers and their vehicles. *Ivey*, 772 F. App'x at 246 (citing *Hendrick*, 235 U.S. at 622). While Clem's insistence on driving unlicensed falls under the broad umbrella of travel, it falls far short of implicating a protected liberty interest in travel. The State of Texas is not preventing Clem from going wherever he wants, whenever he wants. It is simply requiring him to have a license if he wants to go there while driving on Texas's public roads with the public.

Because Clem has failed to plausibly allege a deprivation of a legitimate liberty interest, his procedural due process claim fails.

Clem also fails to state a substantive due process claim. To establish a substantive due process claim, a plaintiff must show that the challenged government action is arbitrary, unreasonable, or has no relationship to a legitimate government interest. *See Simi Inv. Co. v. Harris Cnty., Tex.,* 236 F.3d 240, 249 (5th Cir.2000) (government action comports with substantive due process if "rationally related to a legitimate government interest" and impinges upon it if "arbitrary or capricious"). The State of Texas's requirement that drivers be licensed is clearly related to a legitimate government interest in protecting the public from the dangers presented by unlicensed drivers.

  c. ***Retaliation for asserting rights in violation of the First Amendment***

Clem also appears to claim that because he expressed his belief in a right to drive without a license, Martinez retaliated against him by "hav[ing] my wife cited twice for traffic violations while driving me . . . caus[ing] three police vehicles to conduct an aggressive stop, where [Martinez] stood outside my window while sheriff deputies issued citations . . . repeatedly park[ing] near or outside my house and conduct[ing] stops in front of my residence . . . instruct[ing] deputies to warn me not to drive or face arrest and impoundment . . . [and] approach[ing] my son at a public pool and question[ing] him about my beliefs." Dkt. No. 15 at 7. All of these actions by Martinez, Clem alleges, "have created a chilling effect on my freedom of expression, association, and movement." *Id.* at 7.

To be sure, "[t]he First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the

14

exercise of protected speech activities. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citing *Colson v. Graham,* 174 F.3d 498, 508 (5th Cir. 1999). "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024) (quoting *Hartman v. Moore*, 547 U. S. 250, 256 (2006) (internal quotation marks omitted)).

"To prevail on a First Amendment retaliation claim, a plaintiff must show that he was engaged in constitutionally protected activity, the officer's actions injured him, and 'the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct.'" *Id.* (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017)). But under the objective standard by which officer conduct is judged, "[a] retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" *Id.* (quoting *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam)). In other words, "the motive must *cause* the injury." *Id.* (quoting *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019)). This requires the plaintiff to show that "the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Degenhardt*, 117 F.4th at 758 (quoting *Nieves*, 587 U.S. at 399)).

Accepting as true Clem's factual allegations, he fails to plausibly show that Martinez had no motive except retaliation when he issued traffic citations to Clem's wife, stood outside Clem's vehicle window while other offices issued citations, parked "near or outside" Clem's house, or issued citations to other people in front of Clem's house. And

15

Clem's allegation that Martinez "caused three police vehicles to conduct an aggressive stop," is vague, subjective, and conclusory, not factual. Additionally, there is nothing retaliatory about an officer instructing other officers to caution a person that driving without a license, after being warned to not do so, will subject that person to arrest and the impoundment of his vehicle. On these allegations, there exist undisputed, non-retaliatory reasons for Martinez's actions.

The Court is more troubled by Clem's allegation that Martinez "approached my son at a public pool and questioned him about my beliefs." But that sentence standing alone stops short of making a First Amendment retaliation claim plausible, or demonstrating an injury. Clem does not allege that Martinez questioned his son about Clem's *speaking out* about his belief in a right to drive without a license. Accepting as true that Martinez questioned Clem's son about the belief itself, while this might be ill-advised and the product of poor judgment, it does not plausibly suggest a motive by Martinez to suppress Clem's *speech* about his belief.

### 6. Leave to amend

The undersigned concludes that none of Clem's claims survive judicial screening; however, there is the issue of whether the Court must give Clem leave to amend his complaint. Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already

received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

As explained above, the undersigned finds that Clem has pleaded his best case. Following his original complaint, Clem filed an Amended Complaint, a Supplemental Complaint, responses to the Court's questionnaire, a Second Amended Complaint, and other "supplemental evidence." *See* Dkt. Nos. 10, 14, 15, 19, 21, 22. Thus, Clem has pleaded his best case, and no further amendments should be permitted.

### 7. Conclusion

The undersigned RECOMMENDS that the Court DISMISS with prejudice Clem's Second Amended Complaint and all claims in it, both as frivolous and for failure to state a claim upon which relief can be granted. For the same reasons, the undersigned further RECOMMENDS that the Court deny Clem's Motion for Preliminary Injunction, Dkt. No. 6, which seeks to enjoin Martinez and others from "further arrest, detention, or citation of Plaintiff for the lawful act of private, non-commercial travel." *Id.* at 1.

### 8. Right to object

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed de-

termination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ENTERED this 24th day of October 2025.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE